CADWALADER, WICKERSHAM & TAFT
Attorneys for Northwest Airlines, Inc.
100 Maiden Lane
New York, New York 10038
(212) 504-6000
Bruce Zirinsky (BZ 2990)
Nathan A. Haynes (NH 4955)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
In re                                :
                                     :  Chapter 11
TRAVEL SERVICES, INC., et. al.,      :
                                     :  Case No. 02-10509 (REG)
                                     :
              Debtors                :  (Jointly Administered)
------------------------------------------------------------x

## MOTION OF NORTHWEST AIRLINES, INC.
## TO FILE A LATE CLAIM

Northwest Airlines, Inc. ("Northwest") hereby moves this Court for entry of an order allowing Northwest to file an allowance for an administrative expense claim in the above chapter 11 cases of Travel Services, Inc., Council Travel Services USA, Inc. and Council Charter (collectively, the "Debtors") after the expiration of the administrative claims bar date (the "Motion"). In support of the Motion, Northwest represents as follows:

### INTRODUCTION

1.  Northwest has certain claims for administrative expenses totaling approximately $189,401.96 arising from airline tickets issued by Debtors for air transportation on Northwest after the petition date. On August 7, 2002, an order was entered setting September 3, 2002 as the administrative bar date in this case. Northwest, however, should be permitted to file an allowance for an administrative expense claim in the above chapter 11 cases after the expiration

of the administrative claims bar date. First, as set forth below, Northwest never actually received notice of the administrative claims bar date. Second, Debtors will not be prejudiced by allowing Northwest to file an allowance for an administrative expense claim. The administrative claims bar date only recently passed and administrative expense claims have not been calculated or paid. In addition, Debtors just filed their schedules and have not even established a pre-petition claims bar date. As such, Northwest has met the "excusable neglect" standard and should be allowed to file an allowance for an administrative expense claim.

## FACTUAL BACKGROUND

2. In 1993, Northwest entered into a certain sales agreement pursuant to which Debtors sold Northwest's airline tickets to youths and students worldwide (the "Sales Agreement"). Pursuant to the Sales Agreement, Northwest, among other things, agreed to honor airline tickets issued by Debtors for air transportation on Northwest.

3. On February 5, 2002 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code.

4. Since the commencement of the Bankruptcy case, Northwest has continued to honor its obligations under the Sales Agreement and rendered services on behalf of Debtors. Specifically, in the post-petition period, Northwest has honored airline tickets issued by Debtors to Debtors' customers for air travel on Northwest.

5. As of the end of October, the Debtors owe Northwest the sum of $189,401.96 for amounts due for airline flight coupons issued by Debtors for air transportation on Northwest and honored by Northwest after the petition date through September 2002. Attached as Exhibit "A"

is a proposed administrative expense claim and spreadsheets prepared by Northwest detailing the amounts owed.[1]

6. Northwest estimates the Debtors will owe Northwest additional sums for periods after September 2002. Northwest thus reserves its right to amend its administrative expense request as necessary when the full amount is eventually determined.

7. By Order dated August 7, 2002, a small period of time up to and including September 3, 2002, was established to file any administrative claims in this case (the "Administrative Claims Bar Date"). This left less than one month for parties to be both served with the Administrative Claims Bar Date notice and to file an administrative expense claim.

8. Administrative expenses have not yet been determined and paid in this case nor have Debtors set a pre-petition claims bar date in connection with these chapter 11 cases. In addition, Debtors just filed their schedules on November 12, 2002.

9. In early October, because it had not received any notice, Northwest decided to inquire as to whether a pre-petition claims bar date had been established in this case. In response to this query, the claims agent, Trumbull Services Company, sent Northwest the Administrative Claims Bar Date notice, claiming that it had been sent to "Michelle Pede at Northwest Airlines on August 14, 2002."

10. Northwest checked its employee records, and while no one by the name of "Michelle Pede" has worked at Northwest, an employee by the name of Michelle Pederson does work at Northwest.

---

[1] The full billing records and backup relating to the amounts owed are too voluminous to be attached but will be provided to Debtors, to the extent Debtors do not already have them, upon request if necessary to the resolution of the amounts set forth in this Motion.

11. The Debtors' affidavit of service indicates that two copies of the Administrative Claims Bar Date notice were sent to Northwest, one to "Michelle Pede" as set forth above, and a second to Patti Calhoun. Northwest notes that in Debtors' schedules, Debtors list Northwest as having unsecured, non-priority claims in the amount of $900,000 and provide that the contact person for Northwest is Todd Anderson, <u>not</u> Patti Calhoun or Michelle Pede.[2] Indeed, as set forth below, both Ms. Pederson and Ms. Calhoun, Senior Revenue Clerks in the Agency Sales Accounting Division at Northwest, never received the notice allegedly mailed on August 14, 2002.

12. Specifically, as set forth in the affidavits of Ms. Pederson and Ms. Calhoun, both personally and regularly review all mail addressed to them at their business address, maintain an active daily presence at their business address, and, in the ordinary course of business, both Ms. Pederson and Ms. Calhoun maintain files which reflect all correspondence each has sent to or received from Debtors. (Affidavit of Michelle Pederson ("Pederson Affidavit") at ¶ 2, attached hereto as Exhibit "B"; affidavit of Patti Calhoun ("Calhoun Affidavit") at ¶ 2, attached hereto as Exhibit "C".) Ms. Pederson and Ms. Calhoun have reviewed their files and no Administrative Claims Bar Date notice is included in those files. (Pederson Affidavit at ¶ 4; Calhoun Affidavit at ¶ 4.)

13. Moreover, Northwest employs standardized sorting and routing procedures with respect to court related documents received by its employees. As set forth in the Affidavit of Gerald D. Strong, the Supervisor of Revenue Accounting for Northwest and direct supervisor of all employees in the Agency Sales Accounting Division, Mr. Strong has established standard operating procedures for dealing with such documents, to which each member of his team has

---

[2] Northwest's records indicate that the amount of its pre-petition, unsecured claims is in fact closer to $1.2

4

been trained to adhere. Under those procedures, each employee of the Agency Sales Accounting Division is required to turn over any court document to Mr. Strong immediately upon receipt. (Affidavit of Gerald D. Strong ("Strong Affidavit") at ¶ 3, attached hereto as Exhibit "D".) Despite these procedures and safeguards, Mr. Strong never received the notice. (Strong Affidavit ¶ 4.)

14. Accordingly, the established system for the tracking and routing of court documents at Northwest demonstrates that Northwest did not receive notice of the Administrative Claims Bar Date.

## ARGUMENT

15. Rule 3003(c)(2) of the Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules") requires that "[t]he court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed." Bankruptcy Rule 9006(b) addresses the issue of timing under the Bankruptcy Code in general: "when an act is required or allowed to be done at or within a specified period by these rules . . . or by order of court, the court for cause shown may at any time in its discretion . . . (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect." The "excusable neglect" language of Bankruptcy Rule 9006(b) thus applies to late filing of proofs of claim through Rule 3003(c)(2). *See Pioneer Investment Servs. Co. v. Brunswick Assocs. L.P.,* 507 U.S. 380, 398 (1993).

16. In *Pioneer*, the Supreme Court explained that a court's determination of whether the neglect is "excusable" should be an equitable one, whereby a court should "tak[e] account of all relevant circumstances surrounding the party's omission." *Id.* at 395. The Court noted that:

---

million.

> [I]n overseeing this latter process, the bankruptcy courts are necessarily entrusted with broad equitable powers to balance the interests of the affected parties, guided by the overriding goal of ensuring the success of the reorganization. This context suggests that Rule 9006's allowance for late filings due to "excusable neglect" entails a correspondingly equitable inquiry.

*Id.* at 389.

17. The Supreme Court also set forth the circumstances in determining whether excusable neglect has been met, including: (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *Id.* The Supreme Court held that the neglect of counsel in missing the filing deadline was excusable because notice of the bar date to creditors was inadequate, the creditors' claim was filed prior to plan confirmation, and the Court found no prejudice to any other party or to the administration of the bankruptcy case. *Id.*

A. Northwest Did Not Receive Notice of the Administrative Claims Bar Date

18. First, Northwest never actually received notice of the Administrative Claims Bar Date. As set forth above and in the Pederson Affidavit and Calhoun Affidavit, neither Ms. Pederson nor Ms. Calhoun ever received such notice despite the fact that both regularly review all mail addressed to them, maintain a daily presence at their business address and, in the ordinary course of business, maintain files which reflect all correspondence each has sent or received from Debtors. Indeed, both notices could have been sent in the same envelope addressed, improperly, to a person named "Michelle Pede." At a minimum this establishes an issue with respect to the propriety of the mailing and Northwest should, at least, be given the opportunity to investigate these facts before losing its claim.

19. Moreover, it has been recognized that where a company employs standardized sorting and routing procedures, it can rebut the presumption that documents were received by the intended party. *See, e.g., In re Ms. Interpret*, 222 B.R. 409, 414 (Bankr. S.D.N.Y. 1998). In *Ms. Interpret*, the court acknowledged that, had the law firm which claimed it did not receive service of process presented evidence that it "employed standardized sorting and routing procedures" or "that it regularly reviewed its mail", such evidence could have established that the service of process was never received by the law firm. *Id.*

20. In this case, as set forth above and in the Strong Affidavit, Northwest employs standardized sorting and routing procedures for dealing with such documents, to which each of its employees has been trained to adhere. Pursuant to these procedures, the employees in the Agency Sales Accounting Division are required to turn over any court document to Mr. Strong immediately upon receipt. Thus, this establishes that Northwest's failure to receive the Administrative Bar Date Notice and timely file its claim was not within the control of Northwest.

21. Moreover, the fact that <u>neither</u> Ms. Pederson <u>nor</u> Ms. Calhoun ever received the Administrative Claims Bar Date notice is highly improbable, if not inconceivable, had Debtors properly mailed the Administrative Claims Bar Date notice. The Debtors purportedly mailed two notices to two different people at Northwest, individuals who have not misplaced court documents before. The idea that <u>both</u> of these individuals failed to properly identify and route the exact same set of documents that presumably arrived on the exact same day is both improbable and implausible. Clearly, this dual non-receipt demonstrates that there was some issue or impropriety with the mailing itself.

B.  Allowance of Northwest's Claim Will Not Result in Prejudice to the Debtor

22. In this case, the allowance of Northwest's claim will not result in any danger or prejudice to the Debtor, or any disruption to the efficient administration of these proceedings. Allowing late-filed claim would cause no prejudice to the Debtors because Debtors only filed their schedules on November 12, 2002, have not established a bar date for pre-petition claims nor has any plan been filed. Moreover, administrative expenses have not been calculated and paid.

23. Northwest has also acted in good faith. After dutifully inquiring as to the establishment of any bar dates, Northwest retained counsel, initiated an internal investigation of the facts, and filed the instant Motion.

24. Accordingly, Northwest has thus met the "excusable neglect" standard and its claim should be allowed.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Northwest respectfully requests this Court to enter an order permitting Northwest to file an allowance for an administrative expense claim in the above chapter 11 cases in the form attached hereto as Exhibit "A" and such other and further relief as this Court deems just and proper.

Dated: November 18, 2002
New York, New York

CADWALADER, WICKERSHAM & TAFT

/s/Bruce Zirinsky
Bruce Zirinsky (BZ 2990)
Nathan Haynes (NH 4955)
100 Maiden Lane
New York, New York 10038
(212) 504-6000

ATTORNEYS FOR NORTHWEST
AIRLINES, INC.